1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

9

10

11

12

13

| | |
|---|---|
| RUTHE ELAINE DEAN, | NO.  C15-5031-RJB-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

14

15

16

17

18

19

20

Plaintiff Ruthe Elaine Dean appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

the Commissioner's decision be REVERSED and REMANDED for further administrative

proceedings.

21

22

23

24

REPORT AND RECOMMENDATION - 1

1

## I.     FACTS AND PROCEDURAL HISTORY

2   At the time of the administrative hearing, plaintiff was a fifty-three-year-old woman

3 with a high school education and one year of college.  Administrative Record ("AR") at 38.[1]

4 Her past work experience includes employment as a food service manager, assistant

5 manager/management trainee, waitress, and pizza baker at Pizza Hut as well as a waitress at

6 Blue Beacon Restaurant.  AR at 38-40.  Plaintiff was last gainfully employed as the food

7 service manager of a Pizza Hut in 2011.  AR at 39.

8   On November 22, 2011, plaintiff filed applications for SSI payments and DIB, alleging

9 an onset date of October 16, 2011.  AR at 11, 217, 224, 249.  Plaintiff asserts that she is

10 disabled due to fibromyalgia, arthritis, anxiety and depression.  AR at 54, 217, 224.

11   The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 30,

12 80, 100, 134.  Plaintiff requested a hearing, AR at 164, which took place on May 13, 2013.  AR

13 at 32-79.  On May 29, 2013, the ALJ issued a decision finding plaintiff not disabled and denied

14 benefits based on his finding that plaintiff could perform a specific job existing in significant

15 numbers in the national economy.  AR at 8-25.  Plaintiff's administrative appeal of the ALJ's

16 decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final

17 decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On January 15,

18 2015, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

19

## II.     JURISDICTION

20   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

21 405(g) and 1383(c)(3).

22

23

_____

24  [1] Plaintiff testified that she has earned a college certificate related to secretarial science. AR at 38.

REPORT AND RECOMMENDATION - 2

1    III.    STANDARD OF REVIEW

2    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

3    social security benefits when the ALJ's findings are based on legal error or not supported by

4    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

5    Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

6    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

7    *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

8    (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

9    medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

10   53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

11   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

12   Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

13   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

14   must be upheld. *Id.*

15   The Court may direct an award of benefits where "the record has been fully developed

16   and further administrative proceedings would serve no useful purpose." *McCartey v.*

17   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

18   (9th Cir. 1996)). The Court may find that this occurs when:

19   (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
     claimant's evidence; (2) there are no outstanding issues that must be resolved
20   before a determination of disability can be made; and (3) it is clear from the
     record that the ALJ would be required to find the claimant disabled if he
21   considered the claimant's evidence.

22   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

23   erroneously rejected evidence may be credited when all three elements are met).

24

REPORT AND RECOMMENDATION - 3

1

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Dean bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

impairment, the Commissioner moves to step three to determine whether the impairment meets

or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

true, then the burden shifts to the Commissioner at step five to show that the claimant can

perform other work that exists in significant numbers in the national economy, taking into

consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

claimant is unable to perform other work, then the claimant is found disabled and benefits may

be awarded.

V.      DECISION BELOW

On May 29, 2013, the ALJ issued a decision finding the following:

1.      The claimant meets the insured status requirements of the Social
        Security Act through December 31, 2016.

2.      The claimant has not engaged in substantial gainful activity since
        October 16, 2011, the alleged onset date.

3.      The claimant has the following severe impairments: lumbar strain,
        arthralgias secondary to positive rheumatoid factor, fibromyalgia,

bilateral shoulder pain, major depressive disorder, and anxiety disorder.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some exceptions.  The claimant can lift up to twenty pounds occasionally and lift and/or carry up to ten pounds frequently; stand and/or walk for about six hours in an eight-hour day with normal breaks; and sit for about six hours in an eight-hour day with normal breaks. She must avoid overhead reaching and lifting.  She can frequently reach below shoulder height.  The claimant can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs, can cannot crawl or climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to extreme cold, vibration, and hazards, such as unenclosed or unprotected heights. The claimant can perform simple, routine tasks and follow short, simple instructions.  She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period.  She has the average ability to perform sustained work activities (i.e. can maintain attention, concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e. eight hours a day for five days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absences.  The claimant can respond appropriately to supervision.  She would work best in a work environment that requires minimal interactions with co-workers, that is predictable and with few work setting changes, and that has little or no public contact.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on XXXXX, 1960 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.[3]

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2011, through the date of this decision.

AR at 13-25.

## VI.     ISSUES ON APPEAL[4]

The principal issues on appeal are:

1.      Did the ALJ err in evaluating the medical opinion evidence?

2.      Did the ALJ err in assessing plaintiff's residual functional capacity?

Dkt. 18 at 2; Dkt. 21 at 1.

## VII.     DISCUSSION

A.      The ALJ Erred in Evaluating the Medical Opinion Evidence

*1.      Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

---

[4] The Commissioner correctly points out that plaintiff did not comply with the briefing requirements in the Court's Scheduling Order, Dkt. 15, by properly listing the alleged errors in the ALJ's decision beginning on page one. *See* Dkt. 18 at 2 (plaintiff's statement of issues). This Court has been strictly enforcing these briefing requirements by requiring all parties to resubmit noncompliant briefs in a format that complies with the Scheduling Order. **Plaintiff's counsel is reminded to comply with all the briefing requirements set forth in the Court's Scheduling Orders in the future.  Noncompliant briefs will be stricken.**

contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

REPORT AND RECOMMENDATION - 8

1

2.      *David Dixon, Ph.D.*

2       Examining psychologist David Dixon, Ph.D., conducted a psychological examination

3   of plaintiff for the Social Security Administration on September 18, 2012.  AR at 454-59.  He

4   noted that "a comprehensive clinical interview was not requested or authorized."  AR at 454.

5   With respect to Axis I and II, Dr.  Dixon diagnosed plaintiff with personality disorder NOS,

6   moderate major depressive disorder, and anxiety disorder.  AR at 458.  With respect to Axis

7   III, he diagnosed fibromyalgia with chronic pain, headaches, and arthritis.  AR at 458.  He

8   assigned a Global Assessment of Functioning ("GAF") score of 45.[5]  Dr. Dixon concluded that

9   plaintiff is "able to satisfactorily explain and justify her position and demonstrate rational

10  grounds of explanation for her case fairly although she speaks slowly with low energy . . . Her

11  ability to reason is fair,  displayed by poor comprehension.  Her ability to understand is

12  average." AR at 459.  He assessed her ability to sustain concentration and persistence as fair,

13  and noted that "her ability to interact socially is affected by emotional lability."  AR at 459.

14      With respect to work limitations, Dr. Dixon opined that plaintiff was markedly

15  impaired in her ability to accept instructions from a supervisor, interact with coworkers,

16  perform work activities on a consistent basis, deal with usual stress encountered in the

17  workplace, maintain regular attendance in the workplace, and complete a normal

18  workday/workweek without interruptions from her psychiatric symptoms.  AR at 459.  In

19      [5] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
20  clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC
    ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
21  A GAF score falls within a particular 10-point range if either the symptom severity or the level
    of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates
22  "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty
    in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious
23  symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment
    in social, occupational, or school functioning," such as the lack of friends and/or the inability
24  to keep a job.  *Id.*

addition, he opined that she was moderately impaired in her ability to perform simple and repetitive tasks, as well as more detailed and complex tasks.  AR at 459.  However, he opined that she "would adapt to new environmental conditions" and "is capable of handling funds in her best behalf."  AR at 459.

The ALJ afforded "little weight" to Dr. Dixon's opinions for three reasons.   First, the ALJ asserted that "Dr. Dixon's opinion is too vague and general to be vocationally relevant. For example, although he suggests that the claimant would have a number of moderate and marked impairments in her abilities to perform basic work activities, he does not define these terms."  AR at 21.  Similarly, "[i]n suggesting the claimant would have marked impairment in her ability to maintain regular attendance at work, he does not describe how often the claimant would miss work or have to leave early."  AR at 21.  Second, the ALJ found that Dr. Dixon's opinion "is also inconsistent with the claimant's treatment notes that only describe periods of depression and indicate the claimant's prescription for Cymbalta was generally working well." AR at 21.  Finally, the ALJ noted that Dr. Dixon "relies upon the claimant's subjective statements which are not credible."  AR at 21.

Plaintiff contends that the ALJ erred by rejecting Dr. Dixon's opinion.  With respect to the ALJ's assertion that Dr. Dixon's opinion is "too vague and general to be vocationally relevant," plaintiff asserts that "the ALJ has a clear duty to assist a claimant in the presentation of her claim" by re-contacting Dr. Dixon "to clarify his opinion."  Dkt. 18 at 5 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ's duty to fully and fairly develop the record and ensure claimant's interests are considered extends to represented claimants, and particularly claimants who may be mentally ill); *Smolen v. Chater*, 80 F.2d at 1273, 1288 (9th Cir. 1996) (same); HALLEX I-2-6-56 (the ALJ "must attempt to obtain all evidence pertinent to the matters at issue, and include in the record documentation of such

attempts" and "ALJs have a duty to ensure that the administrative record is fully and fairly developed")).  Plaintiff asserts that the ALJ should have re-contacted Dr. Dixon for clarification, or sought medical expert testimony at the hearing.  Dkt. 18 at 6.

With respect to the ALJ's finding that Dr. Dixon's opinion was inconsistent with treatment records that "indicate the claimant's prescription for Cymbalta was generally working well," AR at 21, plaintiff asserts that numerous notes in the record indicate that plaintiff continued to suffer depressive symptoms on an ongoing basis.  Dkt. 18 at 8 (citing AR at 441-42, 448, 455, 457, 477).  Plaintiff also argues that the ALJ's finding that Dr. Dixon inappropriately relied on plaintiff's unreliable subjective statements "is pure speculation" because it assumes "that Dr. Dixon was incapable of sorting through Plaintiff's self-reports and his own objective findings to arrive at conclusions regarding her functional limitations." *Id*. at 10 (citing *Ryan v. Comm'r of Soc. Sec*., 528 F.3d 1194, 1200 (9th Cir. 2008)).

The Commissioner responds that the ALJ properly provided several specific and legitimate reasons for rejecting Dr. Dixon's opinion.[6]  With respect to the ALJ's finding that Dr. Dixon's opinion was "too vague and general to be vocationally relevant," the Commissioner points out that an ALJ may reject a medical source opinion that is "too vague to be useful."  Dkt. 21 at 3 (citing *King v. Comm'r of Social Sec. Admin*., 475 F. App'x 209, 210 (9th Cir. 2012)).  The Commissioner asserts that the ALJ's "vagueness" finding was reasonable because the terms "moderate" and "marked," as used by Dr. Dixon, did not usefully convey the extent of plaintiff's capacity limitation where his assessment failed to define these terms.  *Id*. (citing POMS DI 24510.065(B)(1) (providing that an RFC assessment should "[i]nclude no severity ratings or nonspecific qualifying terms (e.g., moderate, moderately

---

[6] Specifically, Dr. Dixon's opinion was contradicted by an opinion from non-examining physician Edward Beatty, Ph.D., who opined that plaintiff had no more than moderate mental limitations.  Dkt. 21 at 2 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).

1    severe) to describe limitations.  Such terms do not describe function and do not usefully

2    convey the extent of capacity limitation.").[7]  The Commissioner further asserts that the ALJ's

3    duty to develop the record is only triggered where there is ambiguous evidence or when the

4    record is inadequate to allow for proper evaluation of the evidence, and not by an ALJ

5    rejecting a medical source opinion as being "too vague to be useful."  *Id*. at 4 (citing *Mayes v.*

6    *Massanarai*, 276 F.3d 453, 459-60 (9th Cir. 2001); *King*, 475 F. App'x at 209-10)).

7         Alternatively, the Commissioner contends that even if the ALJ erred by failing to

8    further develop the record, any error was harmless because the ALJ provided other specific and

9    legitimate reasons for rejecting Dr. Dixon's opinion.  *Id*. (citing *Carmickle v. Comm'r Soc. Sec.*

10   *Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).  The Commissioner contends that the ALJ

11   reasonably relied on evidence that plaintiff's affect was normal and appropriate and she was in

12   no acute distress, her Cymbalta was "generally working well," and she had only "periods" of

13   depression.  *Id.* (citing AR at 441, 442, 446).  Finally, the Commissioner asserts that "[g]iven

14   Dr. Dixon's failure to link the marked limitations to any objective evidence, the ALJ

15   reasonably concluded they were based on Plaintiff's unreliable subjective complaints."  *Id.* at

16   6.

17        The Court agrees with the plaintiff that if the ALJ found Dr. Dixon's assessment of

18   functional limitations "too vague to be useful" based primarily upon Dr. Dixon's failure to

19   define the terms "mild" and "moderate" in his assessment, the ALJ should have simply re-

20   contacted Dr. Dixon and requested further clarification of his opinion.  *See Mayes*, 276 F.3d at

21

22        [7] By contrast, the Commissioner points out that non-examining physician "Dr. Beatty
     provided a narrative description of Plaintiff's specific, concrete abilities that took the
23   'moderate' limitations into account."  Dkt. 21 at 3 (citing AR at 113-14).  The ALJ specifically
     noted this difference in his written opinion, pointing out that the "degree and extent of any
24   'moderate' limitations identified in [Dr. Beatty's opinion] are fully described in the narrative
     format[.]"  *Id*. (quoting AR at 21).

1  459-60 ("An ALJ's duty to develop the record further is triggered only when *there is*

2  *ambiguous evidence* or when the record is inadequate to allow for proper evaluation of the

3  evidence.") (emphasis added).  Although the Commissioner cites *King v. Comm'r of Social*

4  *Sec. Admin.* to establish that an ALJ can reject a consulting examiner's assessment of "mild to

5  moderate" limitations without re-contacting the examiner because the terms were "too vague to

6  be useful . . . in evaluating the claimant's residual functional capacity," *King* is an unpublished

7  decision and therefore not controlling precedent.  *See King*, 475 F. App'x at 209-10.

8      A court will reverse an ALJ's decision as not supported by substantial evidence if the

9  claimant shows that the ALJ failed to fulfill his duty to develop the record and the failure

10  prejudiced the claimant.  To be sure, it is relatively rare for the Court to find that an ALJ's duty

11  to further develop the record was triggered by an ambiguity in a physician's opinion.  *See*

12  *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (ruling that if evidence in the record

13  is adequate to make a determination concerning the claimant's disability, then the ALJ has no

14  duty to re-contact doctors).  However, the ALJ's failure to clarify Dr. Dixon's opinion could

15  have prejudiced plaintiff in light of the conflict between Dr. Dixon's assessed limitations and

16  those of the non-examining physician Dr. Beatty, whose opinion the ALJ adopted, as well as

17  the fact that Dr. Dixon was the only acceptable medical source in the record to actually assess

18  plaintiff's psychological functioning in person.

19      In addition, the Court is particularly troubled by the ALJ's rejection of Dr. Dixon's

20  opinion as "vague" based primarily upon Dr. Dixon's use of terms such as "mild", "moderate",

21  "marked", or "severe" to describe plaintiff's functional capacity – terms which are commonly

22

23

24

used to describe claimant's limitations in the social security context.[8]  As Judge Reinhardt

points out in his dissent in *King*,

> Courts, physicians, vocational experts, including the expert in this
> case, and other ALJs use the term "mild to moderate" to describe and
> assess claimants' limitations without any difficulty."  *See, e.g., Massachi
> v. Astrue,* 486 F.3d 1149, 1151 (9th Cir. 2007) (ALJ finding "mild to
> moderate" deficiencies in concentration, persistence and pace); *Roberson
> v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007) (medical opinion noting
> "mild to moderate" limitations in concentration, persistence and pace);
> *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 363 (8th Cir. 2007)
> (vocational expert testimony regarding "mild to moderate" pain); *Johnson
> v. Barnhart,* 434 F.3d 650, 653 (4th Cir. 2005) (ALJ finding claimant
> experiences "mild to moderate" pain); *Longworth v. Commissioner Social
> Security Admin.,* 402 F.3d 591, 594 (6th Cir. 2005) (ALJ finding "mild to
> moderate" limitations in claimant's "ability to deal with work stresses, to
> maintain attention and concentration, to understand, remember and carry
> out detailed instructions and to demonstrate reliability"); *see also Leslie v.
> Astrue,* 318 Fed.Appx. 591 (9th Cir. 2009) (unpublished) (medical opinion
> noting "mild to moderate" carpal tunnel); *Carnes v. Commissioner of
> Social Sec. Admin.,* 291 Fed. Appx. 51, 54 (9th Cir.2008) (unpublished)
> (ALJ finding "mild to moderate" limitations in concentration, persistence
> and pace).

> The ALJ's unexplained conclusion that Dr. Hirokawa's use of the
> phrase "mild to moderate" rendered portions of his opinion too vague to
> be useful does not, therefore, present a clear or convincing reason to reject
> the doctor's uncontradicted opinion: To do so was in error.

> …Nevertheless, if the ALJ believed that the record was insufficient
> to permit him to determine the extent of King's limitations as a result of
> her depression, he was required to seek clarification. "If the ALJ thought
> he needed to know" Dr. Hirokawa's opinion of King's limitations more
> specifically, "in order to evaluate [it], he had a duty to conduct an
> appropriate inquiry, for example, by subpoenaing the physician[ ] or
> submitting further questions to [him]....

*King*, 475 Fed.Appx. at 210-22.

---

[8] Indeed, the ALJ did not reject the opinions of non-examining physicians such as Dr.
Beatty who employed the same terms.  AR at 20-21.  The Commissioner argues that unlike Dr.
Dixon, Dr. Beatty also provided a narrative description of plaintiff's abilities that took his
"moderate" limitations into account.  Dkt. 21 at 3.  This may be true; however, the ALJ could
have simply contacted Dr. Dixon and asked for further clarification of his opinion rather than
rejecting it outright as "vague" based upon his failure to define common terms.

REPORT AND RECOMMENDATION - 14

1    If the ALJ's ability to fully understand the basis of Dixon's opinion was hindered by

2    Dr. Dixon's failure to define these common terms, this is exactly the kind of ambiguity the

3    ALJ is charged with resolving.  *See Smolen*, 80 F.3d at 1288 (providing that ambiguous

4    evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation

5    of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry" by subpoenaing

6    the physicians, submitting further questions to them, or continuing the hearing to augment the

7    record).  This is also not a case where the plaintiff is attempting to shift her own obligation to

8    prove disability to the ALJ.  *Compare Mayes*, 276 F.3d at 459-60.

9    Moreover, the Court is not persuaded by the Commissioner's harmless error argument

10   because the ALJ's two other reasons for rejecting Dr. Dixon's opinion are not specific and

11   legitimate, and supported by substantial evidence.  First, the ALJ's finding that Dr. Dixon's

12   opinion was "inconsistent with the claimant's treatment notes that only describe periods of

13   depression and indicate that the claimant's prescription for Cymbalta was generally working

14   well" is not supported by the record.  As plaintiff points out, the ALJ effectively cherry-picked

15   the record by referencing one treatment note from March 2012.  AR at 22; AR at 446.

16   However, the weight of the record evidence establishes that plaintiff frequently presented at

17   medical appointments as "tearful" or "in tears," including at Dr. Dixon's consultative

18   examination, and that she suffered from depressive symptoms on an ongoing basis and has

19   been taking antidepressant medication for years.  AR at 441 (August 2012), 448 (February

20   2011), 455 and 457 (September 2012), 476-77 (January 2013).  The ALJ's assertion to the

21   contrary is not supported by substantial evidence.

22   Finally, the Court agrees with plaintiff that the ALJ fails to adequately explain his

23   opinion that "Dr. Dixon also relies upon the claimant's subjective statements which are not

24   credible."  AR at 21.  An ALJ may reject a treating physician's opinion if it is based to a large

REPORT AND RECOMMENDATION - 15

extent on a claimant's self-reports that have been properly discounted as incredible.  *See*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Plaintiff does not challenge the

ALJ's credibility assessment in this case.[9]  However, as the Commissioner concedes, Dr.

Dixon conducted a mental status examination and made numerous objective findings during

that examination.  *See* Dkt. 21 at 5-6 (conceding that "Dr. Dixon was able to point to objective

support for some of the conclusions he drew: for instance, he noted Plaintiff's 'ability to reason

is fair, displayed by poor comprehension.'").  The ALJ erred by failing to explain what aspect

of Dr. Dixon's opinion he found unsupported by objective evidence, or improperly based upon

unreliable testimony by plaintiff.  *See Ryan*, 528 F.3d at 1200 (holding that it is improper for

an ALJ to reject the findings of a consultative examiner on the ground that they are based on a

claimant's subjective complaints where there is nothing in the record to suggest that he relied

more on the claimant's subjective complaints than on his or her own clinical observations in

determining the nature of the claimant's functional abilities and limitations).

     Accordingly, this case must be reversed and remanded for the ALJ to re-evaluate Dr.

Dixon's opinion.  On remand, if the ALJ still considers Dr. Dixon's opinion regarding

plaintiff's mental health symptoms to be "vague" or ambiguous, he should obtain further

clarification from Dr. Dixon or additional evidence from another medical expert.

       *3.*    *Mark Heilbrunn, M.D.*

     Examining physician Mark Heilbrunn, M.D., performed a physical assessment of

plaintiff on April 6, 2012.  AR at 339-46.  Dr. Heilbrunn diagnosed plaintiff with fibromyalgia,

_____

     [9] Plaintiff's failure to assign error to the ALJ's credibility assessment is understandable,
as the ALJ found plaintiff not credible in part because she admitted she had lied to the ALJ
under oath during the hearing.  AR at 18.  Specifically, at the conclusion of the hearing
plaintiff stated, "You had asked me a question about me watching my daughter – my
granddaughter . . . I did lie.  I apologize, and I am so sorry.  In the beginning, I watched her for
two months, and I realized I couldn't do it.  So it was more than what I said." AR at 78.

lumbar strain, a history of Raynaud's phenomenon, and bilateral shoulder pain with possible

impingement.  AR at 344.  He noted that plaintiff drove herself to the appointment, "a time of

45 minutes to the appointment site."  AR at 340.  With respect to plaintiff's ability to perform

activities of daily living, Dr. Heilbrunn noted that "she is able to walk/stand for 10-15 minutes

uninterrupted and sit for 30 minutes uninterrupted before changing positions."  AR at 340.  In

his functional assessment, Dr. Heilbrunn concluded that plaintiff "could be expected to

stand/walk for 15 minutes uninterrupted, as manifested in the examination, and has a

maximum standing/walking capacity of 5-6 out of 8 hours, based on the positive physical

findings.  However, within her symptoms of fibromyalgia she would have limitations in

standing and walking; the degree to which her fibromyalgia symptoms limit her

standing/walking activities could not be assessed in the physical examination."  AR at 344.  He

further found that she "would be able to sit for at least 30 minutes uninterrupted, as manifested

in the examination, and has a maximum sitting capacity of 5-6 out of 8 hours, with limitation

justified by lumbar strain."  AR at 344.[10]

The ALJ afforded "some weight" to Dr. Heilbrunn's opinion.  AR at 19.  Specifically,

the ALJ adopted Dr. Heilbrunn's opinion that plaintiff can lift and/or carry ten to twenty

pounds frequently, cannot perform frequent reaching above shoulder level, has no other

manipulative limitations, and that she can sit, or stand/walk, for five to six hours in an eight-

house day.  AR at 19.  However, the ALJ rejected Dr. Heilbrunn's opinion that plaintiff cannot

stand/walk for more than fifteen minutes uninterrupted or sit for more than thirty minutes

uninterrupted for the following reasons: these limitations are (1) based upon the plaintiff's

subjective statements, which are not credible, (2) inconsistent with plaintiff's ability to drive a

---

[10] Dr. Heilbrunn based his opinion on his own physical examination as well as a review of plaintiff's medical records, AR at 339, and noted that "there was no embellishment of symptoms" by plaintiff.  AR at 341.

REPORT AND RECOMMENDATION - 17

car for forty-five minutes, (3) inconsistent with Dr. Heilbrunn's own minimal findings on physical examination, and (4) inconsistent with the minimal and mild objective findings contained in the longitudinal record as a whole.  AR at 19-20.

Plaintiff argues that the ALJ erred by rejecting Dr. Heilbrunn's opinion that plaintiff's fibromyalgia will cause her to need to alternate between sitting and standing, as this is a significant work-related limitation which must be addressed in the RFC finding.  Dkt. 18 at 14. First, plaintiff argues that the ALJ failed to explain how Dr. Heilbrunn over-relied on plaintiff's subjective complaints.  *Id*. at 15 (citing Ryan, 528 F.3d at 1200).  The Court agrees. In his functional assessment, Dr. Heilbrunn stated that plaintiff "would be able to sit for *at least* 30 minutes uninterrupted, *as manifested in the examination*, and has a maximum sitting capacity of 5-6 out of 8 hours, *with limitation justified by lumbar strain*."  AR at 344 (emphasis added).   Dr. Heilbrunn similarly explained that his assessed limitations regarding plaintiff's standing/walking capacity were based upon symptoms "manifested in the examination" and "positive physical findings."  AR at 344.  The Court declines the Commissioner's invitation to presume that Dr. Heilbrunn did not actually base his opinions on his physical findings during the examination – when Dr. Heilbrunn expressly stated that he did - simply because Dr. Heilbrunn's findings are also consistent with plaintiff's self-report regarding her daily activities.

Plaintiff concedes that her ability to drive forty-five minutes to the consultative evaluation conflicts with Dr. Heilbrunn's opinion that plaintiff is only able to "sit for 30 minutes uninterrupted before changing positions."  AR at 340.[11]  Without more, however, this

---

[11] The Court is not as persuaded that plaintiff's 45-minute drive presents a significant inconsistency.  Dr. Heilbrunn's functional assessment provided that plaintiff "would be able to sit for *at least* 30 minutes uninterrupted, *as manifested in the examination*…."  AR at 344 (emphasis added).

REPORT AND RECOMMENDATION - 18

fifteen-minute inconsistency on the date of the examination does not justify the ALJ's rejection of Dr. Heilbrunn's opinion regarding plaintiff's ability to sit and stand during an average workweek.  As plaintiff points out, the fact that plaintiff was able to drive for a total of forty-five minutes on one occasion – especially when her claim for benefits may be denied on the sole basis of failing to attend her consultative examination – does not necessarily indicate that she could sit for such a long period of time without changing positions on a regular and continuing basis during an average workweek.  *See* SSR 96-8p ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."); 20 C.F.R. § 404.1518(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind.").

As noted above, the ALJ also rejected Dr. Heilbrunn's opinion as being inconsistent with "his own minimal findings on physical examination" as well as inconsistent with "the minimal and mild objective findings contained in the longitudinal record as a whole."  AR at 20.[12]  An ALJ may reject a doctor's responses on a questionnaire when such responses are inconsistent with his own medical records.  *Tommasetti*, 533 F.3d at 1041.  Here, however, the ALJ's reasoning is not sufficiently specific because the ALJ fails to adequately explain *how* Dr. Heilbrunn's opinions are inconsistent with either his own report or the longitudinal record.

---

[12] It is not clear that Dr. Heilbrunn's objective findings - or the objective findings in the longitudinal record – are properly characterized as "minimal" and "mild."  As plaintiff argues, the record documents plaintiff's fibromyalgia tender points, trigger points, elevated rheumatoid factor, leg and spine pain, reduced range of motion in her lower extremities, and pain with palpation.  Dkt. 18 at 16 (citing AR at 335, 339, 342-44, 378, 384-85, 391, 393, 440-52, 467, 477-78).

An ALJ may not rely on this type of generic boilerplate critique. *See Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (providing that an ALJ errs by rejecting a medical opinion without explaining why he is finding another medical opinion more persuasive, "or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").  Because the ALJ fails to specify the evidence in either Dr. Heilbrunn's report or the "longitudinal record" that supposedly contradicts Dr. Heilbrunn's opinions, this Court is left to speculate about which evidence the ALJ had in mind.[13]

Accordingly, the ALJ's reasons for rejecting Dr. Heilbrunn's opinions were not specific and legitimate, or supported by substantial evidence in the record.  On remand, the ALJ should re-evaluate Dr. Heilbrunn's opinion.  After re-evaluating the medical opinion evidence, the ALJ should consider whether plaintiff's physical limitations necessitate a sit-stand option.

B.      On Remand, the ALJ Should Reassess Plaintiff's RFC and Step Five Findings

Plaintiff's remaining assignment of error regarding the ALJ's RFC assessment is essentially a restatement of her arguments regarding the medical evidence in this case.  Dkt. 18 at 16-17.  As discussed above, this case is being remanded for a reevaluation of the medical opinion evidence.  The ALJ's RFC assessment and conclusions at step five of the sequential evaluation process are inescapably linked to his prior conclusions regarding this evidence.  Accordingly, the ALJ's RFC assessment and findings at step five are also reversed and remanded.

---

[13] Instead of providing further explanation, the ALJ simply cites to non-examining physician Dr. Staley's opinion.  AR at 20.  However, the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection the opinion of an examining physician. *See Lester*, 81 F.3d at 831.

REPORT AND RECOMMENDATION - 20

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 13, 2015**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 16, 2015**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 29th day of September, 2015.

*James P. Donohue*
_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 21